McCULLOUGH, Judge.
Jesse Williams (defendant) appeals from a judgment entered on his convictions of attempted first degree murder, assault with a deadly weapon with intent to kill inflicting serious injury (AWDWIKISI), and felonious breaking or entering. Upon review, we find no error in part, and vacate and remand for resentencing.
I. Background
Based on events occurring 7 July 2014, on 8 September 2014, a Guilford County Grand Jury returned indictments charging defendant with attempted first degree murder, AWDWIKISI, and felonious breaking or entering. The case came on for trial in Guilford County Superior Court before the Honorable John O. Craig III on 20 April 2015. The evidence at trial tended to show that defendant was involved in an altercation with Tendai Masango in the early morning hours of 7 July 2014, during which Masango was stabbed sixteen times. Defendant, however, put on evidence tending to show that he acted in self-defense. From the evidence, the jury found defendant guilty of all three charges. The trial court consolidated the three offenses and entered a single judgment on 28 April 2015 sentencing defendant to a term of 245 to 306 months imprisonment. Defendant filed notice of appeal on 30 April 2015.
II. Discussion
Defendant now raises the following two issues on appeal: whether the trial court (1) coerced a verdict and (2) erred in entering judgment for felonious breaking and entering. We address defendant's arguments in order.
1. Coerced Verdict
Defendant first argues the trial judge coerced a verdict by telling the jury that they would be required to continue deliberations the following morning if they failed to return a verdict by the end of the day. Defendant contends the trial judge's instructions were a violation of N.C. Gen. Stat. § 15A-1235(c). We are not convinced.
In order to fully understand defendant's argument, it is important to understand the context in which the issue arises. Upon the conclusion of the charge to the jury, the jury retired to begin deliberations at 2:43 p.m. on 28 April 2015. Shortly thereafter, at 4:05 p.m., the bailiff gave the trial judge a note from the jury indicating that "Juror #5 is asking to be accused [sic] due to a surgery in the morning and needing to deliver car tonight." The trial judge addressed the note with counsel before bringing the jury back in to address the matter further. With the jury present, the trial judge asked Juror #5 for details about his surgery and his need to deliver a car, while also explaining that the alternate juror had been released so there was no longer a replacement for Juror #5 and it was virtually impossible to release a juror without having to declare a mistrial. Regarding the surgery, Juror #5 explained that he was scheduled for angioplasty early the following morning. Regarding the car, Juror #5 explained that his grandson was driving him to and from jury duty and then used the car to go to work in the evenings. The judge instructed the jury that it was up to them how long they wanted to deliberate that evening, informing them they could deliberate past five o'clock if they wished. The judge, however, informed Juror #5 that he might not be able to make his surgery the following morning if they did not reach a verdict that afternoon. The judge then suggested that the jury go back to the deliberation room and decide how long they wanted to deliberate that evening. The judge told the jury that once they decided, he would allow them to take a quick break to allow Juror #5 to call his surgeon to inquire about rescheduling the surgery and to call his grandson to arrange a time to be picked up. The judge also informed Juror #5 that the court could provide him transportation home if the jury decided to continue deliberations past the time his grandson needed to go to work. At that time, Juror #5 indicated that he could not call his surgeon because he did not have the telephone number with him, but told the judge that he would call his grandson and "tell him to go ahead and go to work then." With a reminder from the judge to let him know if the jury wished to take a short break, the jury resumed deliberations at 4:18 p.m. A short time later, the judge informed the parties that the jury was not going to take a break, but Juror #5 was going to make a phone call to his grandson and then the jury would continue on with deliberations. The jury knocked with a verdict at 4:50 p.m. and then returned to the courtroom at 4:53 p.m. to announce the guilty verdicts. The defense then polled the jury and all jurors confirmed their guilty verdicts.
Defendant acknowledges there was no objection at trial to the trial judge's statements, but contends the issue is nevertheless preserved for de novo review on appeal because the trial judge's statements to the jury violated a statutory mandate. See State v. May , 368 N.C. 112, 119, 772 S.E.2d 458, 463 (2015) ("[W]hen a trial court is alleged to have violated a mandatory statute, the issue is preserved as a matter of law, but when a trial court is alleged to have violated a permissive statute, we review for plain error if the issue has not been preserved."). Although subsections (b) and (c) of N.C. Gen. Stat. § 15A-1235 have been held to be permissive, see id ., defendant points specifically to the last provision in subsection (c) and contends it is mandatory. That specific provision provides as follows,
[t]he judge may not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals.
N.C. Gen. Stat. § 15A-1235(c) (2015). While the last provision in N.C. Gen. Stat. § 15A-1235(c) appears mandatory, we hold there is no violation of that provision in the instant case.
This Court has explained that
[e]very person charged with a crime has an absolute right to a fair trial and an impartial jury. See State v. Jones , 292 N.C. 513, 521, 234 S.E.2d 555, 559 (1977). Article I, section 24 of the North Carolina Constitution prohibits a trial court from coercing a jury to return a verdict. State v. Patterson , 332 N.C. 409, 415, 420 S.E.2d 98, 101 (1992).... In determining whether a trial court's actions are coercive, an appellate court must look to the totality of the circumstances. Patterson , 332 N.C. at 415-16, 420 S.E.2d at 101. Thus, the defendant is entitled to a new trial if the circumstances surrounding jury deliberations "might reasonably be construed by [a] member of the jury unwilling to find the defendant guilty as charged as coercive, suggesting to him that he should surrender his well-founded convictions conscientiously held or his own free will and judgment in deference to the views of the majority and concur in what is really a majority verdict rather than a unanimous verdict." State v. Roberts , 270 N.C. 449, 451, 154 S.E.2d 536, 538 (1967).
State v. Dexter , 151 N.C. App. 430, 433, 566 S.E.2d 493, 496 (2002). In performing the above analysis, "[s]ome of the factors considered are whether the trial court conveyed an impression to the jurors that it was irritated with them for not reaching a verdict and whether the trial court intimated to the jurors that it would hold them until they reached a verdict." State v. Porter , 340 N.C. 320, 335, 457 S.E.2d 716, 723 (1995).
In this appeal, defendant compares his case to State v. Jones , 292 N.C. 513, 234 S.E.2d 555 (1977), and State v. Dexter , 151 N.C. App. 430, 566 S.E.2d 493 (2002), and argues the trial judge similarly coerced a verdict in this case.
In Jones , the Court recognized that "[u]nder certain circumstances language which informs the jurors that they may be kept for a specific period of time unless they reach a verdict may amount to coercion, tainting the verdict." Jones , 292 N.C. at 521, 234 S.E.2d at 559. In that case, at the time the jury was empaneled on a Tuesday, the judge told at least two jurors who had obligations the coming weekend that there would not be court on Saturday or Sunday. Id . at 522, 234 S.E.2d at 560. However, just before the charge to the jury at 4:20 p.m. on Friday, the judge entered an order extending the session of court as necessary. Id . at 523, 234 S.E.2d at 560-61. The jury then began deliberations just after 6:00 p.m. on Friday. Id . at 523, 234 S.E.2d at 561. At 9:20 p.m. on Friday, the judge called the jury back to address their progress. Upon review of the judge's comments to the jury, the Court granted the defendant a new trial holding that, "in the context of this case, [the judge's] language amounts to improper pressure upon the jury to arrive at a verdict." Id . at 524-25, 234 S.E.2d at 561. The Court explained that "[w]hen [the judge] gratuitously called the jury back into court, spoke to them of their duty to agree and threatened to keep them through the weekend unless they reached a verdict, his actions could have had no other effect than to intimidate and to coerce the jury to reach a verdict." Id . at 524, 234 S.E.2d at 561.
In Dexter , "the trial court, on the third day of deliberations and upon receipt of the jury's two notes regarding its inability to reach a verdict and Juror Gock's request to attend his wife's surgery, simply asked the jury to continue deliberations." Dexter , 151 N.C. App. at 433, 566 S.E.2d at 496. Over a dissent, this Court granted the defendants a new trial, explaining as follows:
Having notified the trial court on three separate occasions that it was unable to reach a unanimous verdict and not having been given an Allen instruction after its final note to the trial court, the jury could reasonably have concluded that it was required to deliberate until it did in fact reach a verdict. Moreover, by not addressing Juror Gock's concerns in the presence of the jury, Juror Gock, not knowing if he would receive permission to attend his wife's surgery the next day, may have felt pressured to reach a verdict by the end of the day. Accordingly, the circumstances surrounding the jury deliberations were such that the jury might reasonably have construed them as coercive, requiring a new trial for Defendants. Furthermore, the trial court erred in addressing only two members of the jury when it told them to "[g]o back" and said "[y]ou want to stay, they can stay." In addition, depending on how these words were understood and relayed by the two jurors, the trial court's statement could have further conveyed the impression to the jury that it was to stay in the jury room until it had reached a verdict. As these errors were prejudicial, Defendants are entitled to a new trial.
Id. at 433-34, 566 S.E.2d at 496 (internal citations omitted).
The present case is distinguishable from both Jones and Dexter in significant respects. First, there was no indication in the present case that the jury was progressing slowly, as in Jones , 292 N.C. at 524, 234 S.E.2d at 561, or that the jury was unable to reach a unanimous verdict, as in Dexter , 151 N.C. App. at 433, 566 S.E.2d at 496. In this case, the note from the jury was given to the judge after the jury had deliberated for just over one hour and fifteen minutes and, contrary to defendant's assertion, there is no indication in the note that the jury was concerned that it would be unable to reach unanimous verdicts that afternoon. As detailed above, the note in this case simply stated that "Juror #5 is asking to be accused [sic] due to a surgery in the morning and needing to deliver car tonight." Second, the jury in this case was not required to deliberate for an unreasonable length of time or for unreasonable intervals, as prohibited by N.C. Gen. Stat. § 15A-1235(c). Our Courts have refused to adopt a hardline rule as to how long, or for what intervals, a jury should be allowed to deliberate. See State v. Baldwin , 141 N.C. App. 596, 608, 540 S.E.2d 815, 823 (2000) ; Porter , 340 N.C. at 337, 457 S.E.2d at 725. Instead, each case is viewed on the totality of the circumstances. The present case is very different from both Jones , in which the jury did not start to deliberate until after 6:00 p.m. on a Friday and the judge called the jury back at 9:20 p.m. to address its progress, 292 N.C. at 524, 234 S.E.2d at 561, and Dexter , in which the jury had deliberated for three days and reported an inability to reach a unanimous verdict, 151 N.C. App. at 433, 566 S.E.2d at 496. In this case, the jury deliberated approximately two hours before reaching unanimous guilty verdicts. Although the trial judge had informed the jury that they could deliberate beyond 5:00 p.m., the jury concluded deliberations before 5:00 p.m. We hold such a period of deliberation is not unreasonable in length or interval in violation of N.C. Gen. Stat. § 15A-1235(c).
Moreover, our Courts have looked to "whether the trial court 'conveyed an impression to the jurors that it was irritated with them for not reaching a verdict and whether the trial court intimated to the jurors that it would hold them until they reached a verdict.' " State v. Baldwin , 141 N.C. App. at 608, 540 S.E.2d at 823 (quoting Porter , 340 N.C. at 335, 457 S.E.2d at 723 ). Upon review of the trial judge's handling of the jury note regarding the potential conflicts of Juror #5, we find no such sense of irritation or intimation. In fact, the judge seemed genuinely concerned for Juror #5 and attempted to address each potential conflict. It appears the trial judge successfully alleviated Juror #5's concern about delivering a car to his grandson by offering transportation to Juror #5, which Juror #5 appeared to accept when he indicated that he would call his grandson and tell him to go to work. The trial judge further offered to allow the jury to deliberate past 5:00 p.m. if additional time was needed to reach a verdict. The jury, however, reached a unanimous verdict before 5:00 p.m. Lastly, the defense polled the jury and each juror confirmed that they found defendant guilty of each offense.
Viewing the totality of the circumstances in the present case, there is no indication that the jury was at a standstill or not otherwise making reasonable progress toward a unanimous verdict. The note received by the trial judge from the jury was merely a request of Juror #5 to be excused because of potential conflicts. Upon review of the transcript, it appears to this Court that the trial judge adequately addressed those concerns without placing undue pressure on the jury to reach a verdict. In fact, the jury returned a verdict without extending deliberations into the extra time that the trial judge afforded the jury. Thus, we overrule defendant's argument that the trial judge coerced a verdict in this case.
2. Felonious Breaking and Entering
Defendant moved to dismiss the breaking and entering with intent to injure the occupant charge in file number 14 CRS 80954 at the close of the State's evidence on the ground that the "indictment is insufficient on its face and fails to charge a crime." Although the trial court noted that "the indictment was phrased in sort of a weird way," the court held that "it meets the bare bones requirements for an indictment[ ]" and denied defendant's motion.
Defendant now argues the trial court erred in denying his motion to dismiss and by entering judgment for felonious breaking and entering because the indictment fails to allege the intent necessary to charge felonious breaking and entering. Thus, defendant contends the indictment was fatally defective on its face and deprived the trial court of subject matter jurisdiction to adjudicate the offense.
"It is well settled that 'a valid bill of indictment is essential to the jurisdiction of the trial court to try an accused for a felony.' " State v. Abraham , 338 N.C. 315, 339, 451 S.E.2d 131, 143 (1994) (citation omitted). "[W]here an indictment is alleged to be invalid on its face, thereby depriving the trial court of its jurisdiction, a challenge to that indictment may be made at any time...." State v. Wallace , 351 N.C. 481, 503, 528 S.E.2d 326, 341, cert. denied , 531 U.S. 1018, 148 L.Ed. 2d 498 (2000).
Among the various requirements of an indictment, N.C. Gen. Stat. § 15A-924 provides that an indictment must contain
[a] plain and concise factual statement in each count which, without allegations of an evidentiary nature, asserts facts supporting every element of a criminal offense and the defendant's commission thereof with sufficient precision clearly to apprise the defendant or defendants of the conduct which is the subject of the accusation.
N.C. Gen. Stat. § 15A-924(a)(5) (2015). This Court has explained further that,
[i]n order to be valid and thus confer jurisdiction upon the trial court, "[a]n indictment charging a statutory offense must allege all of the essential elements of the offense." State v. Snyder , 343 N.C. 61, 65, 468 S.E.2d 221, 224 (1996). The indictment "is sufficient if it charges the offense in a plain, intelligible and explicit manner...." State v. Taylor , 280 N.C. 273, 276, 185 S.E.2d 677, 680 (1972). "[I]ndictments need only allege the ultimate facts constituting each element of the criminal offense," State v. Rambert , 341 N.C. 173, 176, 459 S.E.2d 510, 512 (1995), and "[a]n indictment couched in the language of the statute is generally sufficient to charge the statutory offense," State v. Singleton , 85 N.C. App. 123, 126, 354 S.E.2d 259, 262 (1987). " '[W]hile an indictment should give a defendant sufficient notice of the charges against him, it should not be subjected to hyper technical scrutiny with respect to form.' " State v. Harris , --- N.C. App. ----, ----, 724 S.E.2d 633, 636 (2012) (citation omitted); see also State v. Bowen , 139 N.C. App. 18, 27, 533 S.E.2d 248, 254 (2000) ("The purpose of an indictment is to give a defendant notice of the crime for which he is being charged."). "The general rule in this State and elsewhere is that an indictment for a statutory offense is sufficient, if the offense is charged in the words of the statute, either literally or substantially, or in equivalent words." Harris , --- N.C. App. at ----, 724 S.E.2d at 636 (quoting State v. Greer , 238 N.C. 325, 328, 77 S.E.2d 917, 920 (1953) ).
State v. Barnett , 223 N.C. App. 65, 68-69, 733 S.E.2d 95, 98 (2012).
"The alleged failure of a criminal pleading to charge the essential elements of a stated offense is an error of law that this Court reviews de novo ." State v. Williams , 368 N.C. 620, 622, 781 S.E.2d 268, 270 (2016) ; see also State v. Marshall , 188 N.C. App. 744, 748, 656 S.E.2d 709, 712, disc. rev. denied , 362 N.C. 368, 661 S.E.2d 890 (2008) ("We review the issue of insufficiency of an indictment under a de novo standard of review."). "Lack of jurisdiction in the trial court due to a fatally defective indictment requires the appellate court ... to arrest judgment or vacate any order entered without authority." Barnett , 223 N.C. App at 68, 733 S.E.2d at 97-98 (internal quotation marks and citations omitted).
N.C. Gen. Stat. § 14-54 provides that "[a]ny person who wrongfully breaks or enters any building is guilty of a Class 1 misdemeanor." N.C. Gen. Stat. § 14-54(b) (2015). A breaking or entering is elevated to a Class H felony when the individual "breaks or enters any building with intent to terrorize or injure an occupant of the building [.]" N.C. Gen. Stat. § 14-54(a1) (emphasis added). Thus, pertinent to this case, the essential elements of felonious breaking or entering are (1) the breaking or entering, (2) of any building (3) with intent to injure an occupant. Our Courts have explained that the breaking and entering must be wrongful, or without consent, see State v. Boone , 297 N.C. 652, 655, 256 S.E.2d 683, 686-87 (1979) (holding that, despite the omission of "wrongful" in the felonious breaking or entering statute, the breaking or entering must be without consent), and the felonious intent must exist at the time of the breaking or entering, see State v. Ly , 189 N.C. App. 422, 430, 658 S.E.2d 300, 306 (2008) (" 'An essential element of the crime is that the intent exist at the time of the breaking or entering.' ") (quoting State v. Hill , 38 N.C. App. 75, 78, 247 S.E.2d 295, 297 (1978) ).
The indictment in file number 14 CRS 80954 identified the offense as "Break and Enter With Intent to Injure Occupant" in violation of N.C. Gen. Stat. § 14-54(A)(1) and alleged as follows:
The jurors for the State upon their oath present that on or about the date of the offense shown and in the county named above the defendant named above did unlawfully, willfully and feloniously break and enter the residence, 1002 Barbee Ave., High Point, North Carolina through the rear door located in the resident, Tendai Eva Masango and stabbed her 16 times.
Upon review of the indictment, we agree with the trial court that it is awkwardly worded. Yet, we disagree with the trial court that the pleading meets the bare bones requirements of an indictment to allege the essential elements of felonious breaking or entering. While the first two elements of felonious breaking or entering are clearly alleged, despite the awkward wording, the indictment is absent of any allegation as to defendant's intent to injure an occupant at the time of the breaking or entering, the third essential element of the offense. To reiterate from above, "[f]elonious intent is an essential element of the felony defined in N.C. Gen. Stat. § 14-54, and it ' "must be alleged and proved, and the felonious intent proven, must be the felonious intent alleged[.]" ' " State v. Silas , 168 N.C. App. 627, 632, 609 S.E.2d 400, 404 (2005) (quoting State v. Jones , 264 N.C. 134, 136, 141 S.E.2d 27, 29 (1965) (citation omitted)). The allegation that defendant stabbed Tendai Eva Masango 16 times is not an allegation that defendant possessed the necessary felonious intent at the time of the breaking or entering. Consequently, we hold the indictment failed to allege the essential elements of felonious breaking or entering and the trial court lacked jurisdiction to enter judgment on the felony breaking and entering conviction.
The State admits "an obvious editing or typing gaff" in the indictment and never contends that felonious intent was sufficiently alleged. Instead, the State asserts "that many concerns that might arise when an indictment's sufficiency is challenged do not exist here." Namely, that it is clear from the record that defendant understood that the State sought to charge him for felonious breaking or entering with intent to injure an occupant, and "no credible claim can be advanced that ... defendant somehow was confused, misled or prejudiced by wording in the indictment concerning his intent." However, this Court has rejected similar notice arguments in cases where essential elements to an offense were not alleged in the indictment, holding that
the State's contention that the indictment language ... was adequate to put [d]efendant on notice of the charge and inform him with reasonable certainty the nature of the crime charged is unavailing, as it is well established that merely charging in general terms a breach of a statute and referring to it in the indictment is not sufficient to cure the failure to charge the essentials of the offense in a plain, intelligible, and explicit manner.
Barnett , 223 N.C. App. at 69-70, 733 S.E.2d at 99 (quotation marks, citations, and alterations in original omitted).
Because there is no mention of intent to injure an occupant at the time of the breaking or entering, we hold the indictment fails to list all the essential elements of felonious breaking or entering and is facially defective. Consequently, the indictment was insufficient to confer subject matter jurisdiction upon the trial court to adjudicate the felonious breaking or entering charge and the trial court must arrest judgment on felonious breaking or entering.
However, the indictment was sufficient to charge misdemeanor breaking or entering, a lesser included offense of felonious breaking or entering, and the guilty verdict on felonious breaking or entering supports a guilty verdict on the lesser included offense. See State v. O'Neal , 77 N.C. App. 600, 606, 335 S.E.2d 920, 924 (1985) ("Misdemeanor breaking or entering, [N.C. Gen. Stat. §] 14-54(b), is a lesser included offense of felonious breaking or entering and requires only proof of wrongful breaking or entry into any building. By finding defendant guilty of felonious breaking or entering, the jury necessarily found facts that would support defendant's convictions of non-felonious breaking or entering.") (internal citations omitted). On appeal, even defendant acknowledges "[t]he indictment was sufficient to charge misdemeanor breaking or entering[ ]" and asserts that "the case must be remanded to the trial court for the entry of a judgment and conviction of misdemeanor breaking or entering and a new sentencing hearing." We agree and, guided by prior decisions of this Court, remand this case for sentencing and entry of judgment on convictions for attempted first degree murder, AWDWIKISI, and misdemeanor breaking or entering. See State v. Wilson , 236 N.C. App. 472, 475, 762 S.E.2d 894, 896 (2014) (holding an indictment for attempted first degree murder was fatally defective because there was no allegation of malice aforethought; but remanding for sentencing and entry of judgment on the lesser included offense of attempted voluntary manslaughter, which the court held was sufficiently alleged in the indictment); see also State v. Silas , 168 N.C. App. 627, 635, 609 S.E.2d 400, 406 (2005), modified on other grounds and affirmed , 360 N.C. 377, 627 S.E.2d 604 (2006).
III. Conclusion
For the reasons discussed, we hold the trial court did not coerce a jury verdict. The trial court did, however, err in entering judgment on the felonious breaking or entering conviction because that charge was not sufficiently alleged in the indictment. Therefore, we vacate the judgment and remand for resentencing on defendant's convictions for attempted first degree murder, AWDWIKISI, and misdemeanor breaking or entering.
NO ERROR IN PART, VACATED AND REMANDED FOR RESENTENCING.
Report per Rule 30(e).
Judges HUNTER, Jr., and DIETZ concur.